ETHICON, INC., Plaintiff–Appellant,

v.

Donald J. QUIGG, Commissioner of Patents & Trademarks and the United States Patent & Trademark Office, Defendants–Appellees.

Appeal No. 88–1202.

United States Court of Appeals, Federal Circuit.

June 15, 1988.

David E. Schmit, of Frost & Jacobs, Cincinnati, Ohio, argued, for plaintiff-appellant. With him on the brief, was Ronald J. Snyder.

John C. Martin, Associate Sol., Arlington, Va., argued, for defendants-appellees. With him on the brief, was Fred E. McKelvey, Sol.

Before RICH, NIES, and MAYER, Circuit Judges.

## OPINION

MAYER, Circuit Judge.

Ethicon, Inc. appeals from a grant of summary judgment by the United States District Court for the Eastern District of Virginia, 5 USPQ2d 1138 (1987), holding that the Commissioner of Patents and Trademarks has the authority to stay a patent reexamination proceeding pending the outcome of a case in another district court involving allegations that the same patent is invalid. We reverse.

### Background

U.S. Patent No. 3,499,591 ('591), covering a particular construction for a surgical stapler, was issued to David T. Green in 1970, and he assigned it to the United States Surgical Corporation (USSC). In January of 1981, USSC filed suit in the United States District Court for the District of

Connecticut against three parties unrelated to our case, alleging infringement of four patents, including the '591 patent. The defendants there argue the '591 patent is invalid. The parties in our case do not agree on which claims of the '591 patent are before the Connecticut court, but this does not affect our disposition. The trial in Connecticut was completed in September 1987 and a decision is pending.

In April 1986, USSC sued Ethicon in the United States District Court for the Southern District of Ohio alleging that Ethicon has infringed the '591 patent and a design patent. Ethicon denies infringement and claims the '591 patent is invalid. Again, the parties do not agree which claims are at issue in Ohio but, as with the Connecticut case, it does not matter.

Pursuant to 35 U.S.C. §§ 301-307, on March 12, 1987, Ethicon filed a request with the Patent and Trademark Office (PTO) to reexamine the validity of claims 1-5, 8, 9, and 20 of the '591 patent in view of prior art patents and publications not previously considered by the PTO. The following day, Ethicon asked the Ohio court to stay that litigation pending resolution of the reexamination. The district court denied the request but said, "If and when the Patent Office moves relating to the validity of any of the patents in dispute, at that time this matter can be re-examined."

The PTO granted Ethicon's reexamination request on May 21, 1987, stating, "A substantial new question of patentability affecting Claims 1-5, 8, 9, and 20 of United States Patent Number 3,499,591 to Green is raised...." As a result, on June 3, Ethicon moved the Ohio court to reconsider its decision denying a stay, which was denied as "premature" because "no final determination" of the reexamination had been made.

In August, USSC filed its statement on the PTO's decision to initiate a reexamination in accordance with 35 U.S.C. § 304, and Ethicon filed a reply. Thereafter, under the Manual of Patent Examining Procedure (MPEP) § 2261, the examiner assigned to the reexamination was required to complete a first office action within one month. According to MPEP § 2260, it is "intended" that the examiner's first office action on the merits "be the primary action to establish the issues which exist between the examiner and the patent owner insofar as the patent is concerned."

In early September 1987, USSC filed with the PTO a "Petition to Stay Reexamination Proceeding Pursuant to 37 C.F.R. § 1.565 and MPEP § 2286" of the '591 patent "in deference to an ongoing trial being conducted" in Connecticut. Later in the month, USSC advised the PTO that the Connecticut trial had been completed. According to Ethicon, not all the prior art references involved in the reexamination are before the court in Connecticut, but this is irrelevant to our view of this case.

On October 2, the PTO denied USSC's stay petition because it was untimely under 37 C.F.R. § 1.540. But it nevertheless stayed the reexamination pending the decision of the Connecticut court, relying on MPEP § 2286 which provides in pertinent part:

> If reexamination is ordered the reexamination will continue until the [Patent and Trademark] Office becomes aware that a trial on the merits has begun at which time the reexamination proceeding normally will be stayed, *sua sponte* by the examining group director unless a proper petition to stay has been filed which is not rendered moot by the *sua sponte* stay.

This procedure is based on 37 C.F.R. § 1.565(b) which states, "If a patent in the process of reexamination is or becomes involved in litigation ..., the Commissioner shall determine whether or not to stay the reexamination...."

Ethicon then filed this suit to enjoin the Commissioner from delaying the reexamination and for a declaratory judgment that the stay of the reexamination proceedings was "unlawful and contrary to the reexamination statute, particularly 35 U.S.C. § 305." The district court denied a temporary restraining order and preliminary injunction, and, on cross-motions for summary judgment, granted summary judgment

for the Commissioner. The court reasoned that "37 C.F.R. § 1.565(b) and MPEP § 2286 are reasonably related to the statute because they promote the statutory purpose of achieving expeditious and efficient (i.e., non-duplication) resolution of patent validity issues." 5 USPQ2d at 1142. On appeal, Ethicon renews its argument that the Commissioner has no authority to stay reexamination pending the outcome of district court litigation.

*Discussion*

Consistent with its legislative function, Congress "may leave it to administrative officials to establish rules within the prescribed limits of the statute." *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 605, 225 USPQ 243, 251 (Fed.Cir.1985) (citing *United States v. Grimaud,* 220 U.S. 506, 517, 31 S.Ct. 480, 483, 55 L.Ed. 563 (1911)), *modified on other grounds,* 771 F.2d 480, 226 USPQ 985 (Fed.Cir.1985). In the patent field, Congress has done precisely that by providing that the Commissioner "may, subject to the approval of the Secretary of Commerce, establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent and Trademark Office." 35 U.S.C. § 6(a). In this type of situation, "the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973) (quoting *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 280, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969)); *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Patlex,* 758 U.S. at 606, 225 USPQ at 252. The ultimate question here is whether the Commissioner's exercise of authority to stay a reexamination purportedly pursuant to section 6(a)[1] conflicts with the laws governing reexaminations specifically. If it does, it cannot stand.

The PTO conducts its proceedings in accordance with regulations set out in Title 37 of the Code of Federal Regulations, and the MPEP. The MPEP states that it is a reference work on patent practices and procedures and does not have the force of law, but it "has been held to describe procedures on which the public can rely." *Patlex,* 758 U.S. at 606, 225 USPQ at 252 (citing *In re Kaghan,* 387 F.2d 398, 401, 55 C.C.P.A. 844, 156 USPQ 130, 132 (1967)). Of course, an agency's interpretation of a statute it administers is entitled to deference, *Chevron U.S.A.,* 467 U.S. at 844, 104 S.Ct. at 2782, but "the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

"As always, the 'starting point in every case involving construction of a statute is the language itself.'" *United States v. Hohri,* — U.S. —, 107 S.Ct. 2246, 2250, 96 L.Ed.2d 51 (1987) (quoting *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986)). Section 302 provides that *"[a]ny person at any time* may file a request for reexamination by the [Patent and Trademark] Office of any claim of a patent...." (Emphasis added.) "Within three months following the filing of a request for reexamination under the provisions of section 302 of this title, the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request...." 35 U.S.C. § 303(a). If the Commissioner determines that there is a substantial new question of patentability, the patent will be reexamined. 35 U.S.C. § 304. Section 305 then provides: *"All reexamination proceedings* under this section, including any appeal to the Board of Patent Appeals and Interferences, *will be conducted with special dis-*

---

1. Section references are to Title 35 of the United States Code.

*patch* within the Office." (Emphasis added.) Read together the statutes say: *Any person at any time* may request reexamination and *all* reexamination procedures *will* be conducted with *special dispatch.* The issue for us is whether "special dispatch" contemplates that a reexamination be suspended pending the outcome of a district court case involving allegations of invalidity of the same patent. We conclude that it does not.

"Special dispatch" is not defined in the statute. However, "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *see LSI Computer Systems, Inc. v. United States Int'l Trade Comm'n,* 832 F.2d 588, 590, 4 USPQ2d 1705, 1707 (Fed.Cir.1987). According to *Webster's New World Dictionary,* special means distinctive, unique, exceptional, or extraordinary, and dispatch means to finish quickly or promptly. Consequently, the ordinary, contemporary, and common meaning of special dispatch envisions some type of unique, extraordinary, or accelerated movement. In fact, the PTO itself has interpreted special dispatch to require that "reexamination proceedings will be 'special' throughout their pendency" in the office, and provides for an accelerated schedule. MPEP § 2261. Whatever else special dispatch means, it does not admit of an indefinite suspension of reexamination proceedings pending conclusion of litigation. If it did, one would expect to find some intimation to that effect in the statute, for it would suggest the opposite of the ordinary meaning. But there is none.

"If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). There is no ambiguity here so we turn to the legislative history to

see if Congress meant something other than what it said statutorily. The House report does not define special dispatch, but it says that reexamination "will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation." H.Rep. 1307(I), 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S.Code Cong. & Admin.News 6460, 6463. It also says that an advantage of the reexamination process is that it allows the validity of a patent to be "tested in the Patent office where the most expert opinions exist and at a much reduced cost." *Id.; see Patlex,* 758 F.2d at 602, 225 USPQ at 248; *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342, 217 USPQ 985, 986 (Fed.Cir.1983) ("One purpose of the reexamination procedure is to eliminate trial of [a patent claim validity] issue (when the claim is cancelled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)"). There is no mention of staying a reexamination. The history, therefore, shows that Congress intended the reexamination process to provide an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise. A stay in our situation is not consistent with this intention.

We are unpersuaded by the Commissioner's argument that congressional consideration of giving courts the authority to stay their proceedings pending reexamination while not mentioning stays by the PTO, is evidence that the PTO has that authority. A more plausible inference, if one can be drawn at all from silence, is that Congress contemplated that PTO proceedings would not be stayed. The statute does not provide for a stay of court proceedings because it "is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court." 1980 U.S.Code Cong. & Admin. News at 6463. The committee was correct. Courts have inherent power to manage their dockets and stay proceedings, *Landis v. North American Co.,* 299 U.S. 248, 254,

57 S.Ct. 163, 165, 81 L.Ed. 153 (1936), including the authority to order a stay pending conclusion of a PTO reexamination. *Control Laser Corp.*, 705 F.2d at 1342, 217 USPQ at 986. The Commissioner, on the other hand, has no inherent authority, only that which Congress gives. It did not give him authority to stay reexaminations; it told him to conduct them with special dispatch. Its silence about stays cannot be used to countermand that instruction.

The district court thought that one of the purposes of the legislation was to avoid duplication of efforts by the PTO and the courts. 5 USPQ2d at 1141. Nothing in the statute or legislative history supports this and the Commissioner suggests no other authority for the proposition. In the first place, the PTO's expertise does not exist elsewhere. Secondly, precise duplication of effort does not occur because the PTO and the courts employ different standards of proof when considering validity, and the courts, unlike the PTO during a reexamination of patent claims, are not limited to review of prior art patents or printed publications, 37 C.F.R. § 1.552(a); *In re Etter*, 756 F.2d 852, 856, 225 USPQ 1, 4 (Fed.Cir. 1985) (*in banc*), but may also consider challenges to validity on other grounds.

 Before the courts, a patent is presumed valid and the party asserting invalidity must prove the facts to establish invalidity of each claim by clear and convincing evidence. 35 U.S.C. § 282; *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 974, 1 USPQ2d 1202, 1204 (Fed.Cir.1986). In a reexamination proceeding, on the other hand, there is no presumption of validity and the "focus" of the reexamination "returns essentially to that present in an initial examination," *In re Etter*, 756 F.2d at 857, 225 USPQ at 4, at which a preponderance of the evidence must show nonpatentability before the PTO may reject the claims of a patent application. *In re Caveney*, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985). "[T]he intent underlying reexamination is to 'start over' in the PTO with respect to the limited examination areas involved, and to *re* examine the claims, and to *examine* new or amended claims, as they would have been considered if they had been originally examined in light of all of the prior art of record in the reexamination proceeding." *In re Etter*, 756 F.2d at 857, 225 USPQ at 4.

So, the suspension of PTO proceedings does not prevent duplication; it precludes access to the forum where there is no presumption of validity. But the statutes say that "[a]ny person at any time" may request a reexamination, and "all" reexaminations, not just some of them, "will be conducted with special dispatch."

> That one challenging validity in court bears the burden assigned by [35 U.S.C.] § 282, that the same party may request reexamination upon submission of art not previously cited, and that, if that art raises a substantial new question of patentability, the PTO may during reexamination consider the same and new and amended claims in light of that art free of any presumption, *are concepts not in conflict.* On the contrary, those concepts are but further indication that *litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes.*

*Id.* (emphasis added); *see Joy Manufacturing Co. v. National Mine Service Co.*, 810 F.2d 1127, 1130, 1 USPQ2d 1627, 1629 (Fed. Cir.1987). The inequity of a stay is illustrated by the fact that here Ethicon is not involved in the litigation in Connecticut which led to the suspension in the first place. Conceivably a stay could have been imposed in 1981 and still be running,[2] and Ethicon would have nothing to say about it.

The Commissioner attacks Ethicon's statement that "there may be circumstances in which multiple concurrent proceedings within the Patent Office may well justify a stay of a particular reexamination proceeding" as a suggestion that " 'special dispatch' has one meaning with respect to concurrent PTO proceedings, and another,

---

**2.** It makes no difference to our view of the case that MPEP § 2286 stays reexamination when a *trial* has begun while 37 C.F.R. § 1.565(b) permits a stay when the patent is in *litigation.* Neither is authorized.

stricter meaning with respect to concurrent PTO and court proceedings." Ethicon's comment came because the district court pushed it to speculate about when a stay might be appropriate. But it addresses a hypothetical situation in which there are multiple proceedings before the PTO. That is not this case. We mention it, however, only to observe that the two situations are different and that nothing we say here prevents the Commissioner from conducting orderly proceedings within his office so long as he does not violate the statute. Special dispatch in the posited circumstances may call for coordinated activity to resolve issues seriatim, which would not necessarily violate congressional instructions so long as the reexamination was handled with special priority and progressed as quickly as possible. *See* MPEP §§ 2283–2285. We hesitate to say more without a case before us.

The Commissioner also presents four reasons why he thinks the suspension of reexamination proceedings pursuant to MPEP § 2286 is "reasonably related" to the reexamination statute. First, he says that it would waste PTO resources to continue a reexamination where a trial on the validity of the same patent has begun. Second, because a trial includes live testimony and cross-examination, the court's decision will generally be based on a more complete record. Third, a decision on validity from the PTO prior to decision by a court, which has decided not to stay litigation pending a PTO determination, may unnecessarily complicate the litigation. And fourth, staying a reexamination proceeding until a court renders its decision will avoid the awkwardness that would result if the PTO and the court were to reach different conclusions as to validity. None of these arguments is persuasive.

Of course, the argument that it would waste the PTO's resources to continue a reexamination during a trial essentially repeats the argument that duplication of efforts between the PTO and courts should be avoided, and is objectionable for the same reasons. This also rebuts the Commissioner's next point that a suspension is

proper because a court's decision is likely to be based on a more complete record. By extolling the virtues of district court litigation, which may also include challenges to validity which the PTO cannot consider, however, he ignores the advantages of a PTO reexamination. "Reexamination is . . . neutral, the patentee and the public having an equal interest in the issuance and maintenance of valid patents." *In re Etter*, 756 F.2d at 856, 225 USPQ at 4. And it is likely to be cheaper.

The thought that a PTO decision may unnecessarily complicate the litigation and could create an awkward situation if different conclusions are reached overlooks that challenging validity in a court and requesting PTO reexamination "are concepts not in conflict." *Id.* at 857, 225 USPQ at 4. Suspension prevents the simplification of litigation that might result from the cancellation, clarification, or limitation of claims, and, even if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court, *see Custom Accessories, Inc. v. Jeffrey–Allan Industries, Inc.*, 807 F.2d 955, 961, 1 USPQ2d 1196, 1200 (Fed.Cir. 1986); *Control Laser Corp.*, 705 F.2d at 1342, 217 USPQ at 986, which it could consider in reaching its determination.

■ The awkwardness presumed to result if the PTO and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions. Furthermore, we see nothing untoward about the PTO upholding the validity of a reexamined patent which the district court later finds invalid. This is essentially what occurs when a court finds a patent invalid after the PTO has granted it. Once again, it is important that the district court and the PTO can consider different evidence. Accordingly, different results between the two forums may be entirely reasonable. And, if the district court determines a patent is not invalid, the PTO should continue its reexamination be-

cause, of course, the two forums have different standards of proof for determining invalidity.[3] *Cf. Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 710, 218 USPQ 969, 973 (Fed.Cir.1983) ("prior holding of validity [by a court] is not necessarily inconsistent with the subsequent holding of invalidity [by a court]"); *Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1091, 2 USPQ2d 1490, 1493 (Fed.Cir.1987) (a party charged with infringement may challenge "the validity of patent claims that were upheld in a prior infringement suit to which it was not a party").

To the extent MPEP § 2286 states that the PTO is bound by a court's decision upholding a patent's validity, it is incorrect. On the other hand, if a court finds a patent invalid, and that decision is either upheld on appeal or not appealed, the PTO may discontinue its reexamination. This is consistent with *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed. 2d 788 (1971), which "held that where a patent has been declared invalid in a proceeding in which the 'patentee has had a full and fair chance to litigate the validity of his patent' (402 U.S. at 333, 91 S.Ct. at 1445....), the patentee is collaterally estopped from relitigating the validity of the patent." *Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.*, 717 F.2d 1374, 1376, 219 USPQ 577, 579 (Fed. Cir.1983), *quoted in Allen Archery*, 819 F.2d at 1091, 2 USPQ2d at 1492. Of course, in the end it is up to a court, not the PTO, to decide if the patentee had a "full and fair chance" to litigate the validity of the patent. But it is admissible for the PTO to act on the standing judgment of invalidity unless and until a court has said it does not have res judicata effect.

Finally, even if the Commissioner were correct about these stated fears, there is nothing we can do for him. Congress has said in no uncertain terms that reexaminations are to be conducted with special dispatch. "Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto." *TVA v. Hill*, 437 U.S. 153, 194–95, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978).

### Conclusion

Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

**REVERSED and REMANDED.**

---

**3.** The doctrine of collateral estoppel does not prevent the PTO from completing the reexamination in this situation. Courts do not find patents "valid," *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 699 n. 9, 218 USPQ 865, 871 n. 9 (Fed.Cir.1983), only that the patent challenger did not carry the "burden of establishing invalidity in the *particular case* before the court" under 35 U.S.C. § 282. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569, 1 USPQ2d 1593, 1598 (Fed.Cir.1987) (emphasis added); *accord Shelcore, Inc. v. Durham Industries, Inc.*, 745 F.2d 621, 627, 223 USPQ 584, 588 (Fed.Cir.1984) ("A patent is not held valid for all purposes but, rather, not invalid on the record before the court"). "Thereupon, the patent simply remains valid until another challenger carries the § 282 burden." *Panduit Corp.*, 810 F.2d at 1570, 1 USPQ2d at 1599. Accordingly, a court's decision upholding a patent's validity is not ordinarily binding on another challenge to the patent's validity, *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 710, 711, 218 USPQ 969, 974, 975 (Fed.Cir.1983), in either the courts or the PTO.