**IMAX CORPORATION, et al., Plaintiffs,**

v.

**IN–THREE, INC., Defendant.**

**No. CV05–1795FMC(MCX).**

United States District Court, C.D. California.

July 29, 2005.

---

A. Stephens Clay, Geoffrey K. Gavin, Mitchell G. Stockwell, R. Charles Henn, Jr., Susan A. Cahoon, Kilpatrick Stockton, Atlanta, GA, Chad S. Hummel, Noel Scott Cohen, Manatt Phelps & Phillips, Los Angeles, CA, James J. Hefferan, Jr., Tonya Deem, Kilpatrick Stockton LLP, Winston–Salem, NC, for Plaintiffs.

Heidi L. Keefe, Mark R. Weinstein, Samuel C. O'Rourke, William Sloan Coats, White and Case, Palo Alto, CA, for Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING COMPLETION OF THE REEXAMINATION OF THE U.S. PATENT NO. 4,925,294**

COOPER, District Judge.

This matter is before the Court on Defendant In–Three, Inc.'s Motion to Stay Proceedings Pending Completion of Reexamination of U.S. Patent. No. 4,925,294 (docket no. 54), filed June 10, 2005. The Court, having read and considered the moving, opposition and reply documents submitted in connection with this motion, hereby **DENIES** the motion for the reasons and in the manner set forth below.

## I. Background

This patent infringement action concerns a method and apparatus for converting two-dimensional films into three-dimensional media. On March 11, 2005, Plaintiffs IMAX Corporation ("IMAX") and Three–Dimensional Media Group, Ltd. ("3DMG") brought suit against Defendant In–Three, Inc. ("In–Three") for allegedly infringing U.S. Patent No. 4,925,294 ("294 Patent"). On July 21, 2005, In–Three amended its answer to assert counterclaims that IMAX is infringing three of its patents. In addition to these counterclaims, In–Three asserts affirmative defenses of (1) non-infringement; (2) invalidity of the 294 Patent on nine grounds, including prior art, failure to provide an adequate specification, failure to set forth the best mode contemplated by the alleged inventor, failure to conclude with one or more claims distinctly claiming the subject matter which the patentee regards as his invention; (3) misuse; (4) laches; (5) estoppel; (6) inequitable conduct; and counterclaims for (7) declaratory relief of non-infringement; (8) invalidity/unenforceability; (9) violation of California Business and Professions Code §§ 17200 and 17500, (10) False Designation of Origin under the

Lanham Act, 15 U.S.C. § 1125(a)(1); (11) breach of contract; (12) intentional interference with prospective economic advantage; and (13) common law unfair competition.

On June 9, 2005, In–Three filed an ex parte request for reexamination of the 294 Patent with the United States Patent and Trademark Office ("PTO"). The request for reexamination cited approximately ten alleged prior art references that were not previously considered by the PTO. According to In–Three, the prior art rendered the claims of the 294 Patent obvious and therefore invalid.

The next day, In–Three filed the instant motion to stay these proceedings pending the reexamination by the PTO. In–Three claims that this case is at an early stage, that a stay will not cause prejudice to Plaintiffs, and that a stay will simplify the issues. Plaintiffs point to statistics to show that 91% of requests for reexaminations are granted, and of those 91%, 74% result in some change to the claims of the patent at issue, whether claims are cancelled or simply altered. Keefe Decl. at Ex. B. However, the reexamination process takes a long time. Martens Decl. at ¶ 27. The average pendency of reexaminations is 21.5 months. *Id.* at ¶ 28, Ex. B. The 294 Patent will expire on May 15, 2007. *Id.* at ¶ 31.

## II. Discussion

District courts have the power to stay proceedings pending the outcome of reexamination proceedings in the PTO. *Ethicon v. Quigg,* 849 F.2d 1422, 1426 (Fed.Cir.1988). Courts consider several factors in deciding whether to stay an action: (1) whether a stay will simplify the issues in the litigation; (2) whether discovery is completed and whether a trial date is set; (3) and whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Guthy–Renker Fitness L.L.C. v. Icon*

*Health and Fitness, Inc.,* 48 U.S.P.Q.2d 1058 (C.D.Cal.1998). "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Unidisco v. Schattner,* 210 U.S.P.Q. 622, 629 (D.Md. 1981) (citing *Landis v. North Am. Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

A stay will always simplify the issues in the litigation to some extent. In *Guthy–Renker,* the court noted that absent a stay, the parties

> may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination. Moreover, since the Court will need to interpret the pertinent claims of the patent at some point during this case, waiting until after the reexamination will provide this Court with the expertise of the PTO.

*Guthy–Renker,* 1998 WL 670240, 48 U.S.P.Q. at 1058 (citation omitted). These risks of wasted effort are inherent when more than one tribunal considers the same questions, and in every case, the expertise of the PTO would be helpful. However, these inherent risks and benefits do not necessarily mean that in every case a stay will simplify the issues. As some courts have noted, when reexamination potentially will eliminate only one issue out of many, a stay is not warranted. In *Cognex Corp. v. Nat'l Instruments Corp.,* No. Civ. A. 00–442–JJF, 2001 WL 34368283 (D. Del. June 29, 2001), for example, the court concluded that a stay would not simplify the issues because the complaint alleged "a variety of claims which are not linked to the patent infringement claim." *Id.* at *2. Similarly, in *Gladish v. Tyco Toys Inc.,*

1993 WL 625509, 29 U.S.P.Q.2d 1718, 1720 (E.D.Cal.1993), the court noted that "[t]he reexamination proceeding will not finally resolve all the issues in the litigation." In that case, invalidity was asserted on more grounds than prior publications and patents, the only grounds the PTO considers during reexamination. The court concluded that it was "the only forum for complete consideration of . . . evidence of invalidity." *Id.* Because even after the reexamination, invalidity would continue to be an issue (unless all claims were cancelled), a stay would not preserve many resources. *Id.; see also Enprotech Corp. v. Autotech Corp.,* 1990 WL 37217, 15 U.S.P.Q.2d 1319, 1320 (N.D.Ill.1990) (denying motion to stay in part because PTO would not resolve claims of inequitable conduct).

■ In this case, should the PTO eliminate or alter claims in the 294 Patent, obviously any effort devoted to prior art arguments duplicative of those raised before the PTO will be wasted, and obviously the PTO's guidance on these issues would be useful. However, the Court concludes that the myriad issues in this case that will remain unresolved and unaddressed pending the (potentially) two-year examination justify allowing this case to go forward. Even if the PTO eliminates all the claims of the 294 Patent, which is statistically unlikely,[1] the court must still address In–Three's counterclaims, some of which are completely unrelated to patent infringement.[2] The issues in this case would not be sufficiently simplified to justify a stay.

Next, the Court considers whether this litigation is at an early stage-whether discovery is complete or a trial date set. A trial date has not been set, and discovery is not complete, but much discovery has been conducted. The parties have already submitted volumes of evidence for this Court to consider in connection with their motions for preliminary injunctions. Much of that evidence related directly to the issues In–Three raised before the PTO. For example, both parties submitted expert reports concerning the prior art cited in In–Three's request for reexamination and its effect on the validity of the 294 Patent. So much effort has already been devoted to In–Three's claims of invalidity that it is unlikely much effort by any party or the Court will be saved by allowing the PTO to resolve the invalidity issues.

Finally, the Court considers whether Plaintiffs will be prejudiced by a stay. Each party, in its respective motion for a preliminary injunction, claimed that absent immediate action from this Court, it would be irreparably damaged. Each has claimed that the market for conversion from 2D to 3D motion pictures is at a critical juncture, and that it is the party destined to be the leader of the market. Granting a stay only has the potential to further delay these proceedings. Although some issues in the proceedings might be limited, many issues, inevitably, would remain following the PTO reexamination. Because the Court has denied both motions for preliminary injunction, under each party's theory of irreparable harm, each party has the potential to be damaged by further delays. A swift resolution of the issues, according to both parties, is in the best interest of all involved. The Court accepts both parties' representations that they will be prejudiced by further delays.

---

1. Only 12% of requests for reexamination from third parties result in claims being eliminated. *See* Martens Decl. at Ex. B.

2. The Court declines In–Three's generous offer to stay only IMAX's claims and allow its claims of infringement to go forward. As the parties' motions for preliminary injunctions showed, the issues are far too intertwined to make this a workable solution.

### III. Conclusion

In–Three's motion is DENIED.