Opinion for the court filed by Circuit Judge LOURIE. Dissenting opinion filed by Circuit Judge NEWMAN.
LOURIE, Circuit Judge.
Baxter International Inc. (“Baxter”) appeals from the decision of the Board of Patent Appeals and Interferences (“the Board”) affirming the examiner’s rejections of claims 26-31 of U.S. Patent 5,247,-434 (“the '434 patent”) for obviousness under 35 U.S.C. § 103(a). See Ex parte Baxter Int’l, Inc., No. 2009-006493, 2010 WL 1048980 (B.P.A.I. Mar. 18, 2010) (“Board Decision ”); Ex parte Baxter Int% Inc., No. 2009-006493, 2010 WL 3032865 (B.P.A.I. July 20, 2010) (“Board Rehearing Decision ”). Because the Board did not err in determining that those claims would have been obvious to one of ordinary skill in the art, we affirm.
Background
I.
This patent appeal relates to hemodialysis machines that can function in place of a patient’s kidney to cleanse the blood of toxins using a solution called a dialysate. During hemodialysis, the patient’s blood is pumped though the hemodialysis machine and the dialysate acts to absorb the toxins. To ensure that the process does not filter essential nutrients from the blood, a hemodialysis machine must facilitate the monitoring and control of a number of parameters.
Baxter owns the '434 patent, entitled “Method and Apparatus for Kidney Dialysis,” which discloses and claims a hemodialysis machine integrated with a touch screen user interface that allows an operator to monitor and control a number of parameters. Figure 8 of the patent, reproduced below, depicts an exemplary touch screen interface:
*1359 [[Image here]]
FIG. 8
As depicted above, the interface allows an operator to monitor and control a number of treatment parameters, such as the dialysate temperature, and the patent details the computer system that interfaces with the touch screen to control the delivery of the dialysate and other liquids. Claim 26 of the patent, reproduced below, recites the elements of the integrated hemodialysis machine:
26. A hemodialysis machine comprising:
(a) means for controlling a dialysate parameter selected from a group consisting of dialysate temperature and dialysate concentration, and means for delivering the dialysate to a dialysate compartment of a hemodialyzer; and
(b) a user/machine interface operably coupled to said dialysate-delivery means, the user/machine interface comprising a touch screen adapted to display an indicium corresponding to a parameter pertinent to operation of the hemodialysis machine for performing hemodialysis and to permit the user, by touching the indicium, to cause a change in the parameter.
'434 patent, col.40 11.29-43 (emphases added). Dependent claim 30 includes an additional means plus function limitation, reciting that the hemodialysis machine further comprises a “means for delivering an anticoagulant to a patient.” Id. col.40 11.60-64. Finally, dependent claims 27, 30, and 31 recite that the touch screen provide “indicium soliciting” specific information from the machine’s user: “programmed settings of a time-varying machine-operating parameter” (claim 27); “input from the user corresponding to a rate of anticoagulant delivery” (claim 30); or “a programmed setting of an alarm limit about the machine-operating parameter” (claim 31). Id. col.4011.44-47, 60-68.
*1360 II.
The '434 patent has been subject to litigation. In 2003, one of Baxter’s competitors, Fresenius, filed a declaratory judgment action in the United States District Court for the Northern District of California, seeking, among other claims, a declaration that the patent’s claims were invalid. Fresenius Med. Care Holdings, Inc. v. Baxter Int’l, Inc., No. C 03-1431 SBA, 2007 WL 518804, at *1 (N.D.Cal. Feb. 13, 2007). The parties tried Fresenius’s invalidity claims to a jury, which found that Fresenius had proved by clear and convincing evidence that claims 26-31 of the patent would have been obvious at the time the invention was made. Id. at *2. After trial, Baxter moved for judgment as a matter of law, and the district court granted Baxter’s motion. Id. at *2, *8-9. In particular, the district court concluded that Fresenius failed as a matter of law to show by clear and convincing evidence that Fresenius’s proffered prior art, viz., the CMS 08 Manual, the Cobe C3 Manual, or the Seratron System, contained the “means for controlling” and “means for delivering” limitations of claim 26. Id. at *8.
Upon the entry of a final judgment, Fresenius appealed. We affirmed the district court’s grant of judgment as a matter of law, but for “somewhat different reasons than those articulated by the district court.” Fresenius USA, Inc. v. Baxter Int’l, Inc., 582 F.3d 1288, 1299 (Fed.Cir.2009). We concluded that “Fresenius failed to present any evidence — let alone substantial evidence — that the structure corresponding to the means for delivering dialysate limitation [in claim 26], or an equivalent thereof, existed in the prior art.” Id. In particular, Fresenius failed to identify “the structure in the specification that corresponds to the means for delivering dialysate” and further failed to compare the identified structure to those structures present in the prior art. Id. at 1300. We thus held that the district court correctly granted Baxter’s motion for judgment as a matter of law. Id.
III.
In 2006, in parallel with the Fresenius litigation, the United States Patent & Trademark Office (“PTO”) began to reexamine the '434 patent, stimulated by Fresenius. In the course of those proceedings, the examiner found that a number of references rendered obvious claims 26-31 of the patent, including, among other references, the CMS 08 Manual, the Sarns 9000 Manual, U.S. Patent 4,370,983 (“Lichtenstein”), and U.S. Patent 4,710,166 (“Thompson”). Specifically, with regard to claims 26-29 and 31, the examiner concluded that those claims would have been obvious in light of the combined teachings of the CMS 08 Manual, Lichtenstein, the Sarns 9000 Manual, and two other references not at issue on appeal. Board Decision, 2010 WL 1048980, at *4. Regarding claim 30, the examiner concluded that it would not have been patentable over a combination of the same references in view of Thompson. Id.
Baxter appealed the examiner’s final rejections to the Board. After briefing and oral argument before the Board but prior to issuance of the Board’s decision, we decided the Fresenius case. Shortly thereafter, Baxter petitioned the Director of the PTO to remand the reexamination to the examiner to consider the rejections in light of our Fresenius decision. The Director denied the petition but ordered the Board to consider our decision in Fresenius.
The Board affirmed the examiner’s rejections of claims 26-31. Regarding our Fresenius decision, the Board discussed the holding of the case and concluded that “[although claims 26-31 were not proven *1361 invalid in court, a lower standard of proof and the broadest reasonable interpretation standard of claim construction apply at the PTO and therefore the agency is not bound by the court’s determination.” Board Decision, 2010 WL 1048980, at *12 (citing Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1429 (Fed.Cir.1988); In re Swanson, 540 F.3d 1368, 1377 (Fed.Cir.2008)).
Turning to the merits of the examiner’s rejections, the Board found that the CMS 08 Manual describes the “control of Na, K, and HC03 flow rates using a control unit that may be programmed in ten minute intervals (i.e., a microprocessor) and a pump driven by a stepper motor,” a disclosure that met the corresponding structure in the specification identified by Baxter and the examiner for the “means for controlling” limitation. Board Decision, 2010 WL 1048980, at *14. The Board also found that Baxter “did not assert that Lichtenstein lacks any structure corresponding to element (a) of claim 26” and thus declined to address the rejections based on Lichtenstein. Id.
The Board also affirmed the examiner’s findings regarding the “soliciting” limitations in claims 27, 30, and 31. With respect to claim 27, the Board found that the CMS 08 Manual disclosed that a user can adjust or control time-dependent hemodialysis parameters such as the ultrafiltrate rate and the concentration of substances in the dialysate. Board Decision, 2010 WL 1048980, at *14. Regarding claim 30, the Board found that Thompson in combination with the CMS 08 Manual or the Sarns 9000 Manual rendered obvious the “indicium soliciting input from the user corresponding to a rate of anticoagulant delivery” limitation. Id. at *9-10, *15. Finally, the Board found that the Sarns 9000 Manual described the “indicium soliciting, from the user, a programmed setting of an alarm limit about the machine-operating parameter” limitation in claim 31. Id.
Following the Board decision, Baxter requested rehearing, which the Board denied. Board Rehearing Decision, 2010 WL 3032865, at *1. In particular, the Board rejected Baxter’s argument that the Board had erroneously equated “soliciting” with “control” or “adjust,” reiterating that the CMS 08 Manual disclosed that “the machine interface solicits the user for entry of data to control various parameters such as sodium concentration.” Id.
Baxter timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).
Discussion
I.
The scope of our review in an appeal from a Board decision is limited. We review the Board’s factual findings for substantial evidence and review the Board’s legal conclusions de novo. In re Kotzab, 217 F.3d 1365, 1369 (Fed.Cir.2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).
Although the ultimate determination of obviousness under 35 U.S.C. § 103 is a question of law, it is based on several underlying factual findings, including the differences between the claimed invention and the prior art. Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Similarly, the determination of what a reference teaches is a question of fact. Rapoport v. Dement, 254 F.3d 1053, 1060-61 (Fed.Cir.2001); see also In re Gartside, 203 F.3d 1305, 1316 (Fed.Cir.2000). Thus, we review those factual determinations for substantial evidence. Kotzab, 217 F.3d at 1369.
*1362 In contrast, claim construction is a legal issue that we review de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454-55 (Fed.Cir.1998) (en banc). To ascertain the scope and meaning of the asserted claims, we look to the words of the claims themselves, the specification, the prosecution history, and, lastly, any relevant extrinsic evidence. Phillips v. AWH Corp., 415 F.3d 1303, 1315-17 (Fed.Cir.2005) (en banc).
II.
A.
As an initial matter, the PTO argues that Baxter waived its arguments regarding the “means plus function” limitations in claims 26 and 30 because it failed to timely present those arguments to the Board. Baxter responds that it presented those issues to the Board in its opening brief, its reply brief, and at oral argument. Baxter also argues that the Director allowed Baxter to pursue those arguments in its order denying Baxter’s petition to remand the case from the Board to the examiner.
We agree with the PTO that Baxter waived its arguments regarding the “means for delivering an anticoagulant” limitation in claim 30 by failing to timely raise them before the Board. Absent exceptional circumstances, see In re DBC, 545 F.3d 1373, 1379-80 (Fed.Cir.2008), we generally do not consider arguments that the applicant failed to present to the Board, In re Watts, 354 F.3d 1362, 1367-68 (Fed.Cir.2004). Although Baxter recited the “means for delivering anticoagulant” claim language in the background of its opening brief before the Board, Baxter did not raise that limitation in the arguments section, instead arguing that “Claim 30 Is Patentable Because the Prior Art, Including the Thompson Patent, Fails To Teach or Suggest Touch-Screen Control.” J.A. 7883:11a, 7883:59a. In its reply brief before the Board, Baxter did not address the examiner’s rejection of claim 30 in any respect. See J.A. 9358-59. Unsurprisingly, the Board did not provide an analysis of the “means for delivering an anticoagulant limitation,” but only addressed Baxter’s arguments regarding the “indicium soliciting from the user” limitation of claim 30. Board Decision, 2010 WL 1048980, at *9-10, *15.
Ultimately, Baxter failed to raise the “means for delivering an anticoagulant” limitation before the Board, and, contrary to Baxter’s arguments, the Director’s order denying Baxter’s petition did not preserve for appeal arguments relating to a claim limitation that Baxter never put at issue before the Board. Finally, Baxter has not presented an exceptional circumstance that would allow us to consider arguments that it failed to present to the Board. We accordingly decline to address them.
The record does indicate, however, that Baxter timely raised its arguments regarding the examiner’s analysis of limitation (a) of claim 26 as well as the substantive merit of those rejections, at least regarding the rejections based on the CMS 08 Manual. J.A. 7883:42a-45a. While those arguments did not specifically name the cases that Baxter primarily relies upon on appeal, we do not require such case specificity to preserve a point of error for appeal. See Nelson v. Adams USA Inc., 529 U.S. 460, 469-70, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000) (explaining that the general rule of error preservation “does not demand the incantation of particular words” but simply requires that the lower tribunal “be fairly put on notice as to the substance of the issue”). Thus, we will address Baxter’s arguments on those issues.
B.
Regarding claim 26, Baxter raises a number of arguments on appeal. First, *1363 Baxter argues that the PTO failed to perform the structural analysis required by In re Donaldson Co., 16 F.3d 1189 (Fed.Cir. 1994). . Baxter also argues that the Board’s findings that the prior art discloses the “means for controlling” and “means for delivering the dialysate” limitations are not supported by substantial evidence and contradict the findings of the district court and this court in the Fresenius litigation, to both of which the PTO failed to give serious consideration. Regarding the “means for controlling” limitation, Baxter argues that none of the pages of the prior art references cited by the examiner and the Board actually disclose a microprocessor. With respect to the “means for delivering” limitation, Baxter argues that the prior art “pumps and pump lines” identified by the examiner do not deliver dialysate to a dialysate compartment of a hemodialyzer but instead deliver fluids to other destinations.
The PTO responds that a structural analysis was performed for the “means for controlling” and “means for delivering” limitations. It also argues that substantial evidence shows that the CMS 08 Manual and Lichtenstein disclose the structure corresponding to the challenged means plus function limitations. Finally, the PTO argues that the lower court’s decision and this court’s decision in Fresenius do not control the reexamination proceeding because the PTO and the court system apply different approaches to determine invalidity and patentability.
We agree with the PTO that substantial evidence supported the Board’s findings on claim 26. Regarding Baxter’s arguments that the examiner did not specifically determine the corresponding structure for the “means plus function” limitations in limitation (a), the record indicates that both the examiner and Baxter agreed that the corresponding structure disclosed in the specification for the “means for controlling” limitation included a microprocessor and a concentrate pump. Board Decision, 2010 WL 1048980, at *14; J.A. 9283-84. Similarly, rather than engage in a purely functional analysis of the “means for delivering the dialysate” limitation, the examiner identified a pump, the same type of structure that Baxter contends is the corresponding structure for the “means for delivering the dialysate” limitation. See J.A. 7883:10a, 9284.
Turning to Baxter’s specific arguments regarding the teachings disclosed in the references, we conclude that substantial evidence supports the Board’s finding that the prior art discloses limitation (a) of claim 26. Regarding the “means for controlling” limitation, the CMS 08 Manual discloses a “computer modeling system” with a “[processor” and describes that “electrolyte concentrations” are delivered via “stepper motor driven line pumps” that can be “programmed in ten minute intervals.” J.A. 284, 288, 290. Even if Baxter could overcome the Board’s express finding that Baxter “did not assert that Lichtenstein lacks any structure corresponding” to limitation (a) of claim 26, Board Decision, 2010 WL 1048980, at *14, that reference, in any event, discloses a “microcomputer” that is programmable to carry out specific procedures, including hemodialysis. Lichtenstein, col.3 11.64-65, col.8 11.23-25; see also id. col.20 11.9-15 (“Computer systems such as the ... Intel ‘Multibus’ for its SBC 80 Microcomputer System, can be purchased as assembled units to provide the microcomputer functions, when appropriately programmed.”). The descriptions in both references are similar to the microcontroller and concentrate pumps identified by Baxter as the corresponding structure for the “means for controlling” limitation. '434 patent, col.16 11.45-48, col.17 11.29-33 (explaining that the microprocessor is “built using an Intel 8040 microcontroller” and that the concen *1364 trate pumps “are stepper motor driven ... diaphragm pumps which deliver a calibrated volume of concentrate per stepper motor revolution”).
Substantial evidence also supports the Board’s finding that the prior art disclosed structure corresponding to the “means for delivering the dialysate” limitation. While Baxter argues that the specific pumps in the CMS 08 Manual do not deliver dialysate to a dialysate compartment of a hemodialyzer but instead perform other functions, the reference discloses a “dialysate mixing system” that must be connected to a hemodialyzer, which necessarily requires the dialysate to be pumped between the machines. J.A. 292-99. In addition, on their face, the pumps identified by the examiner in the CMS 08 Manual appear similar in structure and functionality to the “concentrate” pumps and pump lines that Baxter identified as corresponding structure in the '434 patent for this “means plus function” limitation. J.A. 7883:10a (identifying concentrate pump 22 and “the associated structure”). Further, even if Baxter’s arguments regarding Lichtenstein are properly before us, that reference also teaches that a pump delivers dialysate through a flow meter into the dialysate side of a dialysis container used in connection with hemodialysis equipment. Lichtenstein, col.12 11.60-61, col.13 11.41-47.
We also reject Baxter’s argument that the Board erred because it “ignored” our decision in Fresenius and failed to “give serious consideration” to the district court’s Fresenius decision. Opening Br., Baxter Int’l Inc. at 36, 41, 2011 WL 5997217. First, as recounted above, the Board expressly considered our decision in Fresenius. More fundamentally, the PTO in reexamination proceedings and the court system in patent infringement actions “take different approaches in determining validity and on the same evidence could quite correctly come to different conclusions.” Swanson, 540 F.3d at 1377 (quoting Ethicon, 849 F.2d at 1428). In particular, a challenger that attacks the validity of patent claims in civil litigation has a statutory burden to prove invalidity by clear and convincing evidence. Id. (citing 35 U.S.C. § 282); see also Microsoft Corp. v. i4i Ltd., — U.S.-, 131 S.Ct. 2238, 2242, 180 L.Ed.2d 131 (2011). Should the challenger fail to meet that burden, the court will not find the patent “valid,” only that “the patent challenger did not carry the ‘burden of establishing invalidity in the particular case before the court.’ ” Swanson, 540 F.3d at 1377 (quoting Ethicon, 849 F.2d at 1429 n. 3 (internal citations omitted)). In contrast, in PTO reexaminations “the standard of proof — a preponderance of the evidence — is substantially lower than in a civil case” and there is no presumption of validity in reexamination proceedings. Id. at 1378.
This case thus illustrates the distinction between a reexamination and a district court proceeding. In Fresenius, we upheld the district court’s grant of judgment as a matter of law because the patent challenger failed to meet its burden to prove invalidity by clear and convincing evidence — it “failed to present any evidence ... that the structure corresponding to the means for delivering dialysate limitation [in claim 26], or an equivalent thereof, existed in the prior art” and did not identify “the structure in the specification that corresponds to the means for delivering dialysate” or compare the identified structure to those structures present in the prior art. Fresenius, 582 F.3d at 1299. Ultimately, we concluded that the clear and convincing burden of proof in the “means plus function” context “cannot be carried without clearly identifying the corresponding structure in the prior art.” Id. at 1300.
*1365 In contrast, during the reexamination, the examiner sufficiently identified the corresponding structure recited in the '434 patent and identified the structures in the prior art such that a reasonable person might accept that evidence to support a finding that claim 26 is not patentable under a preponderance of the evidence standard of proof. Moreover, in addition to relying on the CMS 08 Manual, the examiner based those rejections on prior art references that were not squarely at issue during the trial on the invalidity issues, such as Lichtenstein and Thompson. See Fresenius, 2007 WL 518804, at *7-8 (discussing the Cobe C3 Manual, the CMS 08 Manual, the Sarns 9000, and the Seratron System). Thus, because the two proceedings necessarily applied different burdens of proof and relied on different records, the PTO did not err in failing to provide the detailed explanation now sought by Baxter as to why the PTO came to a different determination than the court system in the Fresenius litigation.
Lest it be feared that we are erroneously elevating a decision by the PTO over a decision by a federal district court, which decision has been affirmed by this court, the following additional comments must be made. When a party who has lost in a court proceeding challenging a patent, from which no additional appeal is possible, provokes a reexamination in the PTO, using the same presentations and arguments, even with a more lenient standard of proof, the PTO ideally should not arrive at a different conclusion.
However, the fact is that Congress has provided for a reexamination system that permits challenges to patents by third parties, even those who have lost in prior judicial proceedings. Usually one would expect that any such reexamination, such as the one before us, would raise new issues. In this case, the patent examiner relied on new prior art that had not been raised in the prior district court proceeding. Why Fresenius did not present that prior art before the district court we do not know. But the Director apparently found that a substantial new question of patentability had been raised and the examiner was then entitled to conduct a reexamination on the basis of the new art presented and her search of the prior art. Thus, this case is not about the relative primacy of the courts and the PTO, about which there can be no dispute. Finally, we could not conclude that the PTO was barred from conducting the reexamination of the '434 patent because of the final judgment in Fresenius without overruling Ethicon and Swanson, which we cannot do. See Hometown Fin., Inc. v. United States, 409 F.3d 1360, 1365 (Fed.Cir.2005) (“[W]e are bound to follow our own precedent as set forth by prior panels.... ”).
C.
Lastly, Baxter argues that the Board erroneously construed the term “soliciting” in claims 27, 30, and 31 and, under a correct construction of that term, the rejections of those claims were not supported by substantial evidence. In particular, Baxter argues that the Board implicitly construed “soliciting” in an over-broad manner to encompass a touch screen user interface that allows a user to adjust or control the machine, a construction that is not supported by the specification. Baxter argues that the term should have been construed to require the machine to actively seek an action by a user.
We disagree. The PTO does not dispute Baxter’s construction of “soliciting” as requiring the touch screen user interface to actively seek an action by the user, and the Board applied a construction identical in scope, requiring the machine interface to prompt the user for entry of specific data. J.A. 40. That requirement finds support *1366 in the written description. E.g., '434 patent, col.10 11.1-6 (describing that the machine “solicits” a sodium value “by means of a pop-up keypad”).
Under that construction, substantial evidence supports the rejections of claims 27, 30, and 31.’ In particular, the CMS 08 Manual discloses the “soliciting” limitation in claim 27 because the reference depicts a user interface that prompts the user to input a variety of time-varying operating parameters, such as the ultrafiltration rate and the sodium electrolyte profile. J.A. 307-08. Similarly, substantial evidence supports the PTO’s finding that the Sarns 9000 Manual teaches the “soliciting” limitation in claim 31 because that reference discloses a user interface that prompts the user to input a pressure alarm limit. J.A. 450.
Finally, substantial evidence supports the Board’s finding that the CMS 08 Manual or the Sarns 9000 Manual, when combined with Thompson, renders obvious the “indicium soliciting input from the user corresponding to a rate of anticoagulant delivery” limitation in claim 30. As explained above, the CMS 08 Manual and the Sarns 9000 Manual disclose providing an “indicium soliciting” input from a user. Baxter does not contest that Thompson teaches delivering anticoagulants to a patient. See Thompson, col.l 11.9-25. Nor does Baxter contest on appeal that, in view of Thompson’s disclosure, it would have been obvious to one of ordinary skill in the art to modify the user interface described in the CMS 08 Manual or the Sarns 9000 Manual to provide an indicium soliciting input from the user that corresponds to a rate of anticoagulant delivery.
Conclusion
We have considered Baxter’s remaining arguments and conclude that they are without merit. For the foregoing reasons, the Board’s determination that claims 26-31 were not patentable is
AFFIRMED