NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: C. DOUGLASS THOMAS,**
*Appellant*

---

2017-1100

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 12/878,199.

---

Decided: November 17, 2017

---

C. DOUGLASS THOMAS, TI Law Group, PC, San Jose, CA, for appellant.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Joseph Matal. Also represented by JEREMIAH HELM, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED.

---

Before MOORE, CHEN, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

C. Douglass Thomas appeals the final decision of the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office, affirming the examiner's rejection of Mr. Thomas's patent application. Mr. Thomas argues

that the Board erred by failing to apply a de novo standard of review to the examiner's rejection for anticipation and by finding anticipation without substantial evidence to support its finding. Mr. Thomas also challenges the Board's construction of the claim term "word processing program." Because the Board did not err, we affirm.

## BACKGROUND

Mr. Thomas filed U.S. Patent Application No. 12/878,199, titled "Method and System for Formation of Electronic Documents." J.A. 20–65. Mr. Thomas's application discloses a "method and system for creation of customized documents over a network as well as for negotiation of contents for documents over a network (e.g., Internet)." J.A. 51, Abstract.

The specification discloses a document and delivery system 100 illustrated in Figure 1A (reproduced below).



FIG. 1A

J.A. 52, Fig. 1A. As shown, the user's computer (104) connects to the Internet (106) through an Internet Service Provider (108). Document server (102) also couples to the Internet. In operation, the user at computer 104 requests the creation and delivery of a specified document from the document server. The document server, which can also operate as a web server, questions or interrogates the user to get the information required to produce the customized document. The document server may host and use an application program such as a word processing

application to create the customized document.  The word processing application can operate on the document server.  After creating the document, the document server forwards the customized document through the Internet to the user.

Claims 15–22 are the only pending claims in the application and stand rejected under 35 U.S.C. § 102(e)[1] as anticipated.  Independent claim 15 is representative, reciting a four-step method with two "wherein" clauses:

> 15. A method for enhancing functionality of a server computing device coupled to a network, said method comprising:
>
>> [a] operating the server computing device to receive a request for a file from a requestor;
>>
>> [b] linking an application program to the server computing device;
>>
>> [c] operating the application program in accordance with a command set to produce a processed file; and
>>
>> [d] returning the processed file to the requestor,
>>
>> *wherein the application program is a word processing program, and wherein the command set is a macro or a program executable by the word processing program.*

---

[1]  Congress amended § 102 when it passed the Leahy-Smith America Invents Act ("AIA"). Pub. L. No. 112–29, § 3(b)(1), 125 Stat. 284, 285–87 (2011).  However, because the application that led to this application was filed before March 16, 2013, the pre-AIA § 102 applies. *Id.* § 3(n)(1), 125 Stat. at 293.

J.A. 126 (emphasis added to highlight the disputed claim elements). Claims 19 and 20 both depend from claim 15 and recite the additional limitation "wherein the request includes the command set or information used to produce the command set." J.A. 91.

During prosecution, the examiner rejected claims 15–22 as anticipated by U.S. Patent No. 6,067,531 ("Hoyt"). Hoyt discloses server-side automatic generation of a legal contract among multiple clients within a business organization, coupled by a network, accessing a contract database server. Hoyt discloses displaying a pop-up box (1600 in Figure 16, reproduced below) in a graphical user interface of a client applet when a user begins to create a new contract document.



**Fig. 16**

Hoyt Fig. 16. The pop-up box prompts the user to input contract terms (for example, a customer name), select a contract type and subtype using drop-down menus, and indicate whether the current contract is an amendment to an existing contract by selecting radio buttons.

The Board affirmed the examiner's rejection of claims 15–22 as anticipated by Hoyt. Mr. Thomas filed a request for rehearing, which the Board denied.

Mr. Thomas timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

"During examination, claims . . . are to be given their broadest reasonable interpretation consistent with the specification. . . ." *In re Montgomery*, 677 F.3d 1375, 1379 (Fed. Cir. 2012) (quotation omitted); *see also Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2146 (2016). We review the Board's ultimate claim construction de novo. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–41 (2015); *In re Aoyama*, 656 F.3d 1293, 1296 (Fed. Cir. 2011) (citing *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004)).

Anticipation is a question of fact. *In re Gleave*, 560 F.3d 1331, 1334–35 (Fed. Cir. 2009). What the prior art discloses is also a question of fact. *Para-Ordnance Mfg. v. SGS Importers Int'l*, 73 F.3d 1085, 1088 (Fed. Cir. 1995). We review the Board's fact findings for substantial evidence. *Gleave*, 560 F.3d at 1335.

I.

On appeal, Mr. Thomas argues that the Board erred by improperly burdening him with specific rebuttal requirements and by failing to review the examiner's rejections de novo. Relying on *Jung*, Mr. Thomas argues that an applicant need only "identify the alleged error in the examiner's rejections," after which the Board must review the examiner's decision de novo. *See In re Jung*, 637 F.3d 1356, 1365–66 (Fed. Cir. 2011). We are not persuaded by Mr. Thomas's arguments.

We agree with the Board that the examiner established a prima facie case of anticipation when he compared each of Mr. Thomas's claim limitations to Hoyt, identifying the specific teachings in Hoyt that correspond to each claim limitation. J.A. 96–99. Having done so, the examiner put Mr. Thomas on notice of the full basis for his rejection, and the burden properly shifted to Mr. Thomas to rebut the prima facie case of anticipation.

*See In re Packard*, 751 F.3d 1307, 1312 (Fed. Cir. 2014); *see also Jung*, 637 F.3d at 1364; 35 U.S.C. § 132. This required Mr. Thomas to provide specific reasons why Hoyt's teachings did not correspond to each claim element, not to simply list claim elements. *Id.* The act of filing a Board appeal alone does not entitle a patent applicant to de novo review of all aspects of the rejection.

Just like the applicant in *Jung*, Mr. Thomas did not proffer a detailed explanation of the difference between the claims and the prior art before the examiner. *See Jung*, 637 F.3d at 1365. Indeed, Mr. Thomas's appeal brief before the Board was more formulaic and conclusory than the one in *Jung*. For each claim limitation, Mr. Thomas stated the limitation, restated the examiner's Hoyt citation, and concluded that Hoyt failed to teach or suggest the claim limitation, without any basis for that conclusion. When given a second opportunity to provide reasoning in his request for rehearing, Mr. Thomas merely block quoted the same conclusory language from his original brief. The facts before us are even more persuasive than those in *Jung*. Therefore, we agree with the Board that the examiner made out a prima facie case of anticipation and the burden properly shifted to Mr. Thomas to rebut it.

## II.

Mr. Thomas also disputes the Board's finding that Hoyt teaches each and every limitation of independent claim 15 and dependent claims 16–22. Specifically, Mr. Thomas argues that Hoyt's pop-up box does not satisfy the wherein clauses in claim 15 because it (1) is not an "application program," (2) is not a "word processing program," and (3) does not invoke a macro. We address each argument in turn.

First, Mr. Thomas argues that Hoyt's pop-up box is not an "application program." But Hoyt discloses that its pop-up box is from an applet loaded on to the client from

the server.  Hoyt col. 5 ll. 21–39.  The applet itself is an application program, specifically described in the exemplary embodiment as a "contract negotiator JAVA applet." *Id.* at col. 5 ll. 21–39.  We are satisfied that substantial evidence supports the Board's fact findings on this issue.

Second, Mr. Thomas argues that Hoyt's pop-up box is not a "word processing program."  The Board and examiner found that the applet running the pop-up box qualifies as a "word processing program" because the pop-up box "is configured to allow words to be entered by the user . . .[,] which is the same as a word processing program." J.A. 14 (quoting Final Office action at 4 (citing Hoyt, col. 34 ll. 1–23, Figs. 2, 3, 16)).

On appeal, Mr. Thomas urges this court to interpret "word processing program" to mean "a computer application program operated on a computing device to create, edit and store documents."  To our knowledge based on the record before us, Mr. Thomas did not present his "create, edit and store" construction of word processing program to the Board and therefore waived his arguments based on that proposed construction.  *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362 (Fed. Cir. 2012).  Accordingly, we conclude that substantial evidence supports the Board's finding that Hoyt's pop-up box/GUI applet is a "word processing program" under the Board's broad construction of that term.

Third, Mr. Thomas argues that Hoyt does not invoke a macro.  We disagree.  Claim 15 requires a "command set" that is a "macro or a program executable by the word processing program."  Hoyt's pop-up box has radio buttons and a cancel button.  If a user selects the cancel button, the system aborts the new contract.  If a user selects the radio button indicating that the new contract is an amendment to an old contract, the system dedicates data storage to describe the history of the contract.  The user's selection triggers a set of instructions to perform a partic-

ular task, which the Board reasonably found to be the same thing as being a macro. We agree and are satisfied that substantial evidence supports the Board's findings on this issue.

Accordingly, we affirm the Board's affirmance of the rejection of claim 15. Because Mr. Thomas does not present separate arguments in support of the patentability of claims 16–18 and 21–22, we affirm the Board's affirmance of the rejection of these claims as well.

Finally, we turn to Mr. Thomas's additional arguments regarding dependent claims 19 and 20. Mr. Thomas argues that Hoyt does not disclose "wherein the request includes the command set or information used to produce the command set" as required by claims 19 and 20. J.A. 127. The examiner and Board found that, in Hoyt, a user request prompts the display of a pop-up box, and that the rules of the pop-up box (including fields and radio buttons) operate as a command set. *See* Hoyt col. 34 ll. 1–23, Figs. 2, 3, 16. Indeed, in Hoyt, the contract subtypes are defined by an administrator and selected from the pop-up box by the end user. *Id.* at col. 34 ll. 1–23. Once the end user selects the "OK" button in the pop-up box, the new contract of the selected subtype is initiated and the end user can enter terms and comments into the new contract. *Id.* We are satisfied from this disclosure in Hoyt that substantial evidence supports the Board's findings on this issue, and we therefore affirm the Board's affirmance of the rejection of claims 19 and 20.

CONCLUSION

We have carefully considered Mr. Thomas's remaining arguments and find them unpersuasive. For the reasons above, we affirm the Board's decision.

**AFFIRMED**

Costs

None.