NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

--------------------------

**OMEGA PATENTS, LLC,**
*Appellant*

**v.**

**BMW OF NORTH AMERICA, LLC,**
*Appellee*

--------------------------

2022-2012

--------------------------

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00181.

--------------------------

Decided:  January 22, 2024

--------------------------

RYAN SANTURRI, Allen, Dyer, Doppelt & Gilchrist, PA, Orlando, FL, argued for appellant.  Also represented by DAVID CARUS.

KARA ALLYSE SPECHT, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Atlanta, GA, argued for appellee. Also represented by LIONEL M. LAVENUE, Reston, VA; RYAN VALENTINE MCDONNELL, MICHAEL J. MCLAUGHLIN, DAVID MROZ, Washington, DC.

--------------------------

2       OMEGA PATENTS, LLC v. BMW OF NORTH AMERICA, LLC

Before REYNA, HUGHES, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

Omega Patents, LLC ("Omega") appeals the Patent Trial and Appeal Board's ("Board") decision invalidating all claims of its U.S. Patent No. 9,458,814 (the "'814 patent") on obviousness grounds. Because the Board's findings are supported by substantial evidence and the Board did not abuse its discretion, we affirm.

I

The '814 patent describes "a remote start system for a vehicle that provides additional functionality and user convenience." '814 patent 2:60-62. The system includes a remote start transmitter physically separate from the vehicle that is configured to receive a signal from a user and transmit the signal to the vehicle. *See id.* at 5:47-67. Upon receiving the transmitted signal, the vehicle automatically performs multiple functions: a vehicle brake is operated, a climate control system is activated, and the engine is started. *See id.* at 9:45-58.

This multi-functionality, which forms the crux of the parties' dispute, is recited in representative claim 1, reproduced below.

> 1. A remote start control system for a vehicle comprising a data communications bus extending through the vehicle, an engine, at least one vehicle brake being selectively operable based upon a parking brake command on the data communications bus, and a vehicle climate control system operable based upon a climate control command on the data communications bus, the remote start control system comprising:
>
>> a remote start transmitter remote from the vehicle and configured to generate a remote start signal; and

>     a vehicle remote start controller at the vehicle
> and comprising
>
> > a receiver configured to receive the remote
> > start signal from said remote start trans-
> > mitter, and
> >
> > at least one processor cooperating with said
> > receiver and configured to, *in response to
> > the remote start signal,*
> >
> > > *generate the parking brake command
> > > on the data communications bus to op-
> > > erate the at least one vehicle brake,*
> > >
> > > generate the climate control command
> > > on the data communications bus to op-
> > > erate the climate control system, and
> > >
> > > start the engine.

'814 patent 10:9-32 (emphasis added).[1]

BMW of North America, LLC ("BMW") petitioned for *inter partes* review ("IPR") of the '814 patent, challenging the validity of all claims on obviousness grounds. The Board granted institution based on all of BMW's asserted obviousness combinations including, as pertinent to this appeal, the combination of U.S. Patent Nos. 7,650,864 to Hassan ("Hassan") and 6,384,490 to Birzl ("Birzl").

Hassan discloses "a remote starter system for a vehicle that is operable to start the vehicle ignition via a remote transmitter or key fob [or] the like." Hassan at 1:24-26 (J.A. 2895). Hassan's remote starter system performs multiple functions in response to a received signal, including

---

[1]    Although Omega challenges the obviousness determination for all claims, we follow the parties' lead and focus our analysis on claim 1. On appeal, Omega does not raise any arguments unique to any other claim.

"start[ing] the vehicle's ignition" and "control[ling] the vehicle's . . . climate control system." *Id.* at 1:24-41 (J.A. 2895). Hassan describes optional security features designed to "limit or substantially preclude a person entering and/or driving the vehicle after it has been remotely started" by "not allow[ing] the vehicle to be shifted out of 'park' when in 'remote start mode' unless the vehicle key has been inserted into the ignition," only terminating the remote start mode "in response to the driver inserting the ignition key into the ignition of a vehicle or unlocking the vehicle doors" and "shut[ting] down the engine immediately" upon sensing vehicle movement. *Id.* at 3:65-5:43 (J.A. 2896-97). While Hassan contemplates other functionality intended to provide for safety and security, it does not discuss brake control.

Birzl discloses a process of automatically activating a vehicular service brake in response to detecting an "imminent starting" of the vehicle engine in order to "provide a simple process for increasing driving safety and operating comfort when starting an engine," doing so by securing the vehicle "against rolling away during the starting operation." Birzl at 1:48-2:7 (J.A. 2906). More specifically, the process involves sequential steps of detecting an imminent engine start, activating the service brake, starting the engine, and then releasing the service brake. *See id.* at 3:38-67 (J.A. 2907). Birzl provides several exemplary methods of detecting the imminent engine start, including "the unlocking of the vehicle, the opening of the vehicle door, a driver seat occupation detection and/or an operation of the ignition lock or the ignition/start determination." *Id.* at 2:8-14 (J.A. 2906).

In its Final Written Decision, the Board invalidated all claims of the '814 patent as obvious based principally on the combination of Hassan and Birzl, finding, among other things, that "a person with ordinary skill in the art recognizing the problem of rollaway would have been motivated to combine Hassan's remote start features with the

automatic brake engagement of Birzl." J.A. 31. Omega timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## II

Omega's appeal presents two issues. First, whether the Board erred in finding all claims of the '814 patent invalid as obvious. Second, whether the Board properly considered all relevant evidence before it. We address each issue in turn.

## A

"The ultimate question of obviousness is a legal question that we review de novo with underlying factual findings that we review for substantial evidence." *Roku, Inc. v. Universal Elecs., Inc.*, 63 F.4th 1319, 1324 (Fed. Cir. 2023). "Whether a person of ordinary skill in the art would have been motivated to modify or combine teachings in the prior art, and whether he would have had a reasonable expectation of success, are questions of fact." *OSI Pharm., LLC, v. Apotex, Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Hassan discloses all limitations of claim 1 except the step of activating a parking brake in response to the remote signal. Birzl discloses activating a parking brake in response to detecting an "imminent start," but only describes local car starting. Neither party disputes these findings as to the scope of the prior art. Omega instead contends that the Board failed to identify a reasoned motivation to combine Hassan and Birzl, faulting the Board for impermissibly adopting an overly generic motivation of "safety and convenience." Opening Br. at 18. We, however, find substantial evidence supports the Board's conclusion that the motivation to combine Hassan and Birzl is derived from the

6        OMEGA PATENTS, LLC v. BMW OF NORTH AMERICA, LLC

two references themselves.  As the Board noted, Hassan already contemplates the need for safety features but does not provide a mechanism for preventing vehicle rollaway during remote start.  The Board, crediting the testimony of BMW's expert, Dr. Eskandarian, was "persuaded . . . that Hassan's safety features that may reduce risk of rollaway, such as terminating remote start mode if vehicle movement is detected, would have been recognized as insufficient for improving safety from rollaway." J.A. 30.  Consequently, "a person with ordinary skill in the art would have turned to Birzl," which identifies vehicle rollaway as a safety concern when starting a vehicle's engine and presents a solution of automatically activating a brake upon detecting an imminent engine start, in order "to prevent a vehicle from unintentionally beginning to move." *Id.*; *see also* Birzl at 1:12-25, 1:48-55 (J.A. 2906).  The Board's obviousness conclusion – that a person of ordinary skill in the art "would have combined Hassan and Birzl to include the well-known safety benefits of brake actuation to a remote start system," and this combination "would have specifically mitigated the safety risk of a rollaway while preserving the convenience of a remote start," J.A. 29-30 (internal brackets and quotation marks omitted) – is, thus, supported by substantial evidence.

Omega additionally faults the Board for purportedly ignoring the testimony of its expert, Mr. McAlexander, contending that a skilled artisan would not combine Hassan with Birzl because the references perform opposite and incompatible functions in response to the same sensed conditions.  Mr. McAlexander opined that in response to detecting the "sensed critical conditions" of vehicle unlocking, key insertion, or vehicle occupancy, Hassan discloses terminating the remote start while Birzl, upon detecting the same conditions, starts the engine; therefore, according to Mr. McAlexander, their combination would defeat each reference's operability.  The Board fully considered and rejected this opinion, finding it irrelevant because BMW's

obviousness theory did not involve modifying the use of Birzl's "sensed critical conditions" into Hassan. J.A. 28; *see also id.* at 25-26. Obviousness is determined based on "what the combined *teachings* of the references would have suggested to those having ordinary skill in the art" and "does not require an actual, physical substitution of elements." *In re Mouttet*, 686 F.3d 1322, 1332-33 (Fed. Cir. 2012) (emphasis added). Birzl's teaching of starting the engine in response to "sensed critical conditions" is separate from its "teaching of actuating a brake command on ignition." J.A. 28. It was reasonable for the Board to determine that "the combination of Hassan and Birzl teaches or suggests [actuating a parking brake command on ignition] regardless of the 'sensed critical conditions.'" *Id.* This conclusion, based again on the prior art disclosures themselves, is supported by substantial evidence.

Omega makes numerous other arguments against the Board's motivation-to-combine findings. These contentions, at most, provide support for a finding the Board did not reach, but fail to show an absence of substantial evidence for the finding the Board actually did reach. Omega's efforts are unavailing, as "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Board's] finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *see also Standley v. Dep't. of Energy*, 26 F.4th 937, 942-43 (Fed. Cir. 2022) ("Where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, [the Board's] decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.") (internal brackets and quotation marks omitted).

B

We review the Board's decision for compliance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 550 *et seq.* pursuant to the standards of review set out in the APA.

Under the APA, we must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," made "without observance of procedure required by law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2). The Board abuses its discretion if its "decision was not based on the relevant factors or it fails to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Japanese Found. for Cancer Research v. Lee*, 773 F.3d 1300, 1304 (Fed. Cir. 2014) (internal quotation marks omitted). While we require the Board to provide sufficient explanation to convey that it "has done its job," "we will uphold a decision of less than ideal clarity if [the Board's] path may reasonably be discerned." *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1370-71 (Fed. Cir. 2020) (internal quotation marks omitted).

Omega argues that the Board abused its discretion by disregarding critical portions of the evidentiary record – specifically, the teachings of the prior art and Mr. McAlexander's expert testimony. Omega suggests that by explicitly discussing and adopting Dr. Eskandarian's testimony while simultaneously providing no express analysis of Mr. McAlexander's testimony, the Board failed to satisfactorily explain its decision. While we have held that the Board "must have both an adequate evidentiary basis for its findings and articulate a satisfactory explanation for those findings," *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1374 (Fed. Cir. 2021), this does not require the Board to comprehensively address every argument raised. So long as the Board has "provide[d] an administrative record showing the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions," in such a manner that the Board's path is reasonably discernable, the Board has sufficiently performed

its job in accordance with the APA. *Alacritech*, 966 F.3d at 1370 (internal quotation marks omitted).

The Board met these obligations here. The Board acknowledged and rejected all of Omega's arguments, including those allegedly supported by Mr. McAlexander's testimony. The Board then proceeded to "weigh the evidence of record," which is its duty, not an abuse of discretion. *Regents of the Univ. of Minn. v. Gilead Scis., Inc.*, 61 F.4th 1350, 1359 (Fed. Cir. 2023). Nor is it an abuse of discretion for the Board to find one expert's testimony more persuasive than another's. To the contrary, "[w]e defer to the Board's findings concerning the credibility of expert witnesses." *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010). Omega has provided no persuasive basis to conclude that the Board missed any material evidence in the prior art or expert testimony in arriving at its conclusion, and the Board's path is readily discernable. Omega's contentions, therefore, fail.

### III

We have considered Omega's remaining arguments and find them unpersuasive. For the forgoing reasons, we affirm the Board's decision.

### AFFIRMED

### COSTS

Costs awarded to appellee.