NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CPC PATENT TECHNOLOGIES PTY LTD.,**
*Appellant*

**v.**

**ASSA ABLOY AB, ASSA ABLOY INC., HID GLOBAL CORP., ASSA ABLOY GLOBAL SOLUTIONS, INC., MASTER LOCK COMPANY, LLC,**
*Appellees*

_____

2024-1492, 2024-1493

_____

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-01093, IPR2022-01094.

_____

Decided:  November 10, 2025

_____

STEVEN M. COYLE, Cantor Colburn LLP, Hartford, CT, argued for appellant.  Also represented by NICHOLAS GEIGER, MICHAEL J. RYE; ANDREW C. RYAN, Bartko LLP, San Francisco, CA.

LIONEL M. LAVENUE, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, argued for appellees.  Also represented by JONATHAN J. FAGAN, Washington, DC;

BENJAMIN AARON SAIDMAN, KARA ALLYSE SPECHT, Atlanta, GA.

———————————

Before PROST, WALLACH, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CHEN.

Dissenting opinion filed by *Circuit Judge* WALLACH.

CHEN, *Circuit Judge.*

CPC Patent Technologies Pty Ltd. (CPC) appeals from two final written decisions by the Patent Trial and Appeal Board (Board), both of which held the challenged claims in U.S. Patent No. 8,620,039 ('039 patent) unpatentable under 35 U.S.C. § 103. *ASSA ABLOY AB v. CPC Pat. Techs. PTY, Ltd.*, No. IPR2022-01093, 2024 WL 378066, at *1 (P.T.A.B. Jan. 31, 2024) (*Final Decision I*); *ASSA ABLOY AB v. CPC Pat. Techs. PTY, Ltd.*, No. IPR2022-01094, 2024 WL 378074, at *1 (P.T.A.B. Jan. 31, 2024) (*Final Decision II*). For the following reasons, we *reverse and remand* both decisions.

BACKGROUND

I

CPC owns the '039 patent, which relates to credit card security, and in particular, biometric verification of the user. '039 patent col. 1 ll. 13–15, col. 2 ll. 10–22, col. 2, ll. 51–61. Biometric verification ensures that the identity of the customer using a credit card matches the identity of the registered card owner, thereby assuring that only the authorized owner of the card can initiate transactions. This requires storing not only the user's credit card number, but also his or her biometric signature, such as a fingerprint. *Id.* col 2. ll. 23–26.

During a transaction, a biometric reader collects the biometric data of the customer. The biometric reader then sends that biometric information, along with the credit

card information retrieved from the card reader, to a back-end system. The back-end system in turn checks for a match, and if a match exists, the transaction proceeds.

The '039 patent recognizes that biometric verification mechanisms existed within the prior art. *See, e.g.*, *id.* FIG. 2 (depicting prior art biometric verification mechanisms). The '039 patent, however, purports to introduce a particular way of storing the biometric data during enrollment of any given user: "[t]he biometric signature is stored at a memory address defined by the ('unique') card information on the user's card as read by the card reader of the verification station." *Id.* col. 2 ll. 64–67.

Claim 1, representative[1] for both appeals, recites:

A method of enrolling in a biometric card pointer system, the method comprising the steps of:

    receiving card information;

    receiving the biometric signature;

    defining, dependent upon the received card information, a memory location in a local memory external to the card;

    determining if the defined memory location is unoccupied; and

---

[1] Both parties focused on a particular limitation in this claim and treated it as representative for the appeal as to all challenged claims. We do so too. But as we note below, we summarily affirm the cancellation of claim 1 in a different IPR (which relied on different prior art). *See infra* Discussion Section I. Therefore, our discussion about errors the Board made in this appeal only extends to claims 3–18, which were not at issue in the other appeal.

storing, if the memory location is unoccupied, the biometric signature at the defined memory location.

*Id.* at claim 1.

CPC, on appeal, focuses on the third limitation, "defining, dependent upon the received card information, a memory location in a local memory external to the card." *Id.*; *see generally* Appellant's Br.

## II

Only one prior art reference, Hsu,[2] is relevant to this appeal. Hsu, much like the '039 patent, describes a biometric verification mechanism. *See* Hsu ¶ 6. During enrollment, Hsu requires each user to present (1) a fingerprint and (2) his/her personal identification, such as an employee number, account number, card number, etc.—the system assigns an identifying number if the user does not yet have one. *Id.* ¶ 26. Hsu then teaches storing the personal identification number "in association with" the user's fingerprint image data. *See id.* ("The account number is stored in the database . . . in association with the user's fingerprint image data.").

## III

ASSA Abloy AB (ASSA) petitioned for two *inter partes* reviews of the '039 patent. In its first petition, ASSA challenged claims 1–2, 13–14, and 19–20 as unpatentable over two prior art combinations, both of which relied on Hsu. *See Final Decision I*, 2024 WL 378066, at *3. And its second petition challenged claims 3–12 and 15–18 as unpatentable over several prior art combinations, all of which again relied on Hsu. *See Final Decision II*, 2024 WL

---

[2]    European Pat. Publ'n No. EP 0924655; J.A. 943–50.

378074, at \*4.  The Board instituted review on both petitions.

Of relevance in the first proceeding, the Board issued a claim construction for "defining."  *See Final Decision I*, 2024 WL 378066, at \*6–7.  It agreed with CPC that "defining" "mean[s] 'setting' or 'establishing,'" explaining that "[o]nce the card information and fingerprint are received during enrollment, the card information provides data that establishes *where*, i.e., at what memory location or address, the system will *store* the fingerprint data."  *Id.* at \*7.  The Board adopted an identical construction in the second proceeding.  *See Final Decision II*, 2024 WL 378074, at \*6–8.

After setting forth its construction, the Board turned to Hsu.  It reiterated how Hsu's "fingerprint data [is] associated with corresponding user numbers."  *Final Decision I*, 2024 WL 378066, at \*14 (quoting Hsu ¶ 26).  That, in the Board's view, sufficed for having the card data "define" the memory location of biometric data because "the 'association' is the *where*," i.e., "where the fingerprint data is stored."  *Id.* at \*15.  The Board ultimately held that ASSA's first ground rendered the challenged claims unpatentable, and didn't reach ASSA's second ground.  The second proceeding followed a similar analysis.  *See Final Decision II*, 2024 WL 378074, at \*13–16.

CPC appeals both decisions, contending the Board misapplied its construction of "defining" to Hsu.[3]  We consolidated both appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4).

---

[3]    Both CPC and ASSA treat the two appeals identically, focusing their arguments on the first proceeding.  *See generally* Appellant's Br.; Appellees' Br.  We therefore cite only to the first proceeding.  *See Final Decision I*, 2024 WL 378066.

STANDARD OF REVIEW

Obviousness is a question of law based on underlying factual findings, and what a reference teaches is a question of fact. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012). We review the Board's factual findings for substantial evidence, but the Board's legal conclusions de novo. *Id.*

DISCUSSION

I

We begin with housekeeping. Today, in a separate appeal, we affirmed the unpatentability of claims 1–2 and 19–20 of the '039 patent in view of a different prior art combination. *See CPC Pat. Techs. Pty Ltd.* v. *Apple, Inc.*, No. 24-1365 (Fed. Cir. Nov. 10, 2025). Given that affirmance, our scope of review here extends only to claims 3–18 (though we subsequently refer to claim 1 for convenience, given that both parties treated it as representative and focus on the Board's analysis for claim 1). *See, e.g., XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (declining to review patentability arguments because a separate appeal affirmed the unpatentability of the same claims).

II

CPC raises a simple and straightforward argument: "to associate with"—what the Board found Hsu teaches—does not mean "to set" or "to establish"—what the claims, as construed by the Board, require. And because of that mismatch, there is no substantial evidence for the Board's finding that Hsu uses card information to define the biometric signature's memory location. We agree.

The Board acknowledged that "associated with" differs in meaning from "set" or "establish." *Final Decision I*, 2024 WL 378066, at *14 (citing MERRIAM-WEBSTER ONLINE DICTIONARY). But in its view, because Hsu teaches

associating a personal identifier (e.g., employee account number) with biometric data, Hsu "concomitantly discloses 'defining,' 'setting,' or 'establishing' a memory location for the fingerprint data in relation to the employee account number." *Id.*

That inference has a problem: to associate two pieces of data with one another does not necessarily mean that one piece of data sets, or otherwise establishes, the location of the other piece of data. Of course, Hsu must necessarily set aside *a* memory location for storing a user's biometric data. *See* Hsu ¶ 26. But the Board did not meaningfully grapple with the '039 patent's additional constraint that the *card information* determines (i.e., establishes) *the* memory location of the biometric data. *See* '039 patent at claim 1. And without any explanation or evidence underpinning the Board's assumption—that associating the card information with the biometric data means the former controls the decision of where to store the latter—its decisions lack substantial evidence. *See Regents of the Univ. of Minnesota v. Gilead Scis., Inc.*, 61 F.4th 1350, 1355 (Fed. Cir. 2023) ("A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding.").

## III

ASSA argues that, while the Board used the term "associate" in lieu of "set" or "establish" in its analysis of Hsu, it did not err. Appellees' Br. 22. Instead of equating the meaning of "associate" with "set," ASSA contends the Board found that the "*effect* of Hsu's association" ultimately disclosed the claim limitation. *Id.* at 22–23. Yet as we just explained, the effect of Hsu's association is to do exactly that: "associate" two pieces of data together—nothing more. Contrary to the dissent's view, Hsu's disclosure offers nothing to suggest that its card information "tells you" where to store the fingerprint data. *See* Hsu ¶ 26; Dissent at 4.

Nor can the Board's cited testimony bridge this gap. Mr. Stuart Lipoff, ASSA's expert, opined that Hsu's fingerprint image "is stored at a memory location associated with the specific user/employee number received from a card." *Final Decision I*, 2024 WL 378066, at \*14 (quoting J.A. 1025 ¶ 93). But at most, that statement merely confirms the associative link between the card information and the biometric data. Still missing is any non-conclusory testimony that Hsu's card information determines the memory location of the biometric data.

Mr. Lipoff further opined that, even if Hsu does not explain the mechanics of where to store the biometric information, a skilled artisan would resort to a few "simple known options" for storing that data. *Id.* at \*15 (citing J.A. 3160–61 ¶ 33). In one such option, "[u]pon a user enrolling by providing a user number, the system looks up the user number and determines the corresponding memory location for storing the user's fingerprint." J.A. 3160–61 ¶ 33. While this statement engages with the correct understanding of "set" or "establish," it suffers from a different issue: it simply parrots the elements of the claim, and deems it a "known option," without any non-conclusory reasoning for why. *See TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Conclusory expert testimony does not qualify as substantial evidence.").

The Board also reasoned that, from a temporal standpoint, Hsu's system must first receive card information before then storing any biometric data, since the biometric data "cannot be stored until directed to, i.e. 'associated with,'" the card information. *Final Decision I*, 2024 WL 378066, at \*15. Perhaps. But requiring card information to *exist* before storing any biometric data does not mean that the card information itself *sets* the *location* of the

biometric data.  The Board offered no explanation to bridge this lacuna.[4]

### CONCLUSION

We have considered the remaining arguments, but find them unpersuasive.  Both parties agree that, if we find the Board's analysis of Hsu lacks substantial evidence, we should remand for consideration of other unpatentability grounds not reached by the Board and not otherwise foreclosed by this decision.  *See* Oral Arg at 13:53–14:18, 14:39–15:29.  Accordingly, we *reverse* and *remand* both of the Board's decisions as to claims 3–18.  Because of our affirmance in appeal No. 24-1365, finding claims 1–2 and 19–20 unpatentable, we dismiss the appeal to those claims as moot.  *See, e.g.*, *XY*, 890 F.3d at 1298.

### DISMISSED-IN-PART, REVERSED-IN-PART, AND REMANDED

### COSTS

Costs to Appellant.

---

4    The dissent faults us for "fail[ing] to examine 'the record as a whole.'"  Dissent at 6 (citation omitted).  We disagree.  All of the Board's relied-upon evidence has the same infirmity we identified above.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**CPC PATENT TECHNOLOGIES PTY LTD.,**
*Appellant*

**v.**

**ASSA ABLOY AB, ASSA ABLOY INC., HID GLOBAL CORP., ASSA ABLOY GLOBAL SOLUTIONS, INC., MASTER LOCK COMPANY, LLC,**
*Appellees*

———————————

2024-1492, 2024-1493

———————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-01093, IPR2022-01094.

———————————

WALLACH, *Circuit Judge*, dissenting.

I would affirm the Board.  The Board's conclusion that Hsu discloses the Defining Limitation is supported by substantial evidence.  The majority's holding to the contrary

2          CPC PATENT TECHNOLOGIES PTY LTD. v. ASSA ABLOY AB

substitutes its own analysis of the facts for that of the Board. Accordingly, I respectfully dissent.[1]

## I.

A claim is invalid for obviousness if, to a person having ordinary skill in the art, "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made." 35 U.S.C. § 103(a) (2006).[2] *Graham v. John Deere Co.* sets forth underlying factual inquiries, two of which are relevant here: (1) "the scope and content of the prior art"; (2) "differences between the prior art and the claims at issue." 383 U.S. 1, 17 (1966).

---

[1]    While I dissent in this case, I join the majority today in a separate appeal affirming the unpatentability of claims 1–2 and 19–20 of the '039 patent in view of a different prior art combination and agree with the majority's articulation of the claims within the scope of this case's review as a result. Maj. Op. at 6. *See CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, No. 24-1365 (Fed. Cir. Nov. 10, 2025).

Except where indicated, I rely on the majority's factual background; legal standards; and shorthand nomenclature for the underlying proceeding, parties, and prior art. Unlike the majority, Maj. Op. at 3–4, 3 n.1, 6, 7, I refer to the relevant claim limitation in this appeal as "the Defining Limitation" consistent with the parties' briefing. Blue Br. 1–2 & n.2; Red Br. 7–8.

[2]    Section 103 has since been amended. *See* Leahy Smith America Invents Act, Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287–88 (2011) ("AIA"). However, because the application that led to the '039 patent was filed before March 16, 2013, the pre-AIA § 103(a) applies. *See id.*, § 3(n)(1), 125 Stat. at 293. References to "35 U.S.C. § 103" are to pre-AIA 35 U.S.C. § 103.

"The scope of our review in an appeal from a Board decision is limited." *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012). We review the Board's decisions in accordance with the Administrative Procedure Act, 5 U.S.C. § 706. The differences between the claimed invention and the prior art and the determination of what a reference teaches are underlying factual findings that we review for substantial evidence. *In re Baxter*, 678 F.3d at 1361 (citations omitted). The substantial evidence standard "involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) (citation omitted). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (citation omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (citation omitted).

## II.

The Board sufficiently "show[ed] the evidence on which [its] findings are based, accompanied by the agency's reasoning in reaching its conclusions." *TQ Delta*, 942 F.3d at 1358 (citation omitted). The Board construed the Defining Limitation. Appx0013–16. It summarized CPC's and ASSA's arguments on the Defining Limitation. Appx0024–26; Appx0032. It provided its corresponding analysis. Appx0032–39. In the Board's analytical portion alone, it cited as evidence: Hsu ¶¶ 11, 20, 26, Fig. 4; Lipoff Declaration ¶ 93; Lipoff Deposition at 33:16–34:9, 34:19–35:9; Second Lipoff Declaration ¶¶ 33–34; Merriam-Webster Online Dictionary; and CPC's expert, Dr.

Russ's, Declaration ¶¶ 49, 53–54.[3]  Volume is not a measure of compliance with the Administrative Procedure Act, but in this case, an examination of the record as a whole evinces that the Board's factfinding is supported by "substantial evidence." *In re Gartside*, 203 F.3d at 1312.

The crux of Hsu's disclosure was put by ASSA's counsel during oral argument, consistently with the briefing and Board decision, as: "you cannot put the fingerprint information into Hsu unless you have the user information that tells you . . . where in the table in the database to put the fingerprint information." Oral Arg. at 16:48–17:32; *see also* Red Br. 13, 21–22, 28; Appx0033.

The first part, that putting fingerprint information into Hsu requires user information, is not disputed.  In Hsu: "[t]he enrollment procedure requires that each user enroll by presenting a finger to the fingerprint sensor . . . .  [T]he user also presents an account number [or] one is assigned at this stage."    Hsu ¶ 26 at column 7, lines 1–12; Appx3160–61 ¶¶ 33–34.

The second part was disclosed by Hsu according to the Board relying on substantial evidence that the user information "tells you" (as in "sets" or "establishes") where in the table in the database to put the fingerprint.  To summarize: the Board relied on Hsu's Figure 4 and description in ¶ 26, for disclosing a fingerprint database in which the fingerprint is to be stored during enrollment and that includes reference prints and related account number for each user.  Appx0033 (quoting Hsu ¶ 26 ("fingerprint data are associated with corresponding user numbers . . . .")).  The Board further understood that the user number "defines, sets, or establishes *where* the fingerprint is stored"

---

[3]   In the Board's claim construction portion, it cited an additional source: Microsoft Computer Dictionary, 5th Ed. (2002).  Appx0015 n.8.

because: "the user's identity has to be independently verified" by the user number; Hsu stores the user's fingerprint data "associated with" a user's employee number; and "associated" means "related, connected, or combined together." Appx0033–34 (first citing Hsu ¶¶ 11, 26, Fig. 4 at block 66; then citing Merriam-Webster Online Dictionary). The Board was persuaded by Mr. Lipoff's testimony that "[t]he 'fingerprint image . . .' [is] not stored at *any* memory location in the database—rather, it is stored at a memory location associated with the specific user/employee number received from a card." Appx0034–35 (quoting Appx1024–25 ¶ 93). Mr. Lipoff was an undisputed POSITA and expert in the subject matter whose education, historical knowledge, and background in databases was provided to the Board. Appx0984–88. In this summary, I have omitted the Board's engagement with CPC's counterarguments; recitation of Lipoff in deposition testifying "consistently with his declaration"; and credit of the Lipoff Second Declaration as "[c]ommensurate with [the Board's] understanding of Hsu's disclosure." Appx0035–38.

The majority substitutes its own analysis for that of the Board on "underlying factual findings" that this Court is supposed to review "for substantial evidence." *In re Baxter*, 678 F.3d at 1361. This occurs twice.

First, the majority substitutes its own judgment of the differences between the claimed invention and the prior art. *Id.* The majority agrees that Lipoff analyzing Hsu "confirms the associative link between the card information and the biometric data." Maj. Op. at 8 (quoting Appx1025 ¶ 93). However, the majority holds that Hsu's effect is to "'associate' two pieces of data together—*nothing more.*" Maj. Op. at 7 (emphasis added). This improperly supplants the Board's factfinding. The majority's reversal of the Board only to circumscribe Hsu's disclosure as literally just the words of Hsu is contrary to the statutory standard "to a person having ordinary skill in the art," 35 U.S.C. § 103(a), and to our standard to review for what

6          CPC PATENT TECHNOLOGIES PTY LTD. v. ASSA ABLOY AB

"*a* reasonable fact finder could have arrived at," *TQ Delta,*
942 F.3d at 1358 (emphasis added).

The majority's rigid interpretation of the prior art
stands in contrast to the majority's paraphrasing of the De-
fining Limitation. The majority faults the Board for alleg-
edly lacking support to conclude (in the majority's words):
"that associating the card information with the biometric
data means the former controls the decision of where to
store the latter." Maj. Op. at 7. "Control[ling]" a "decision"
is not in the words of the Defining Limitation or the Board's
analysis. Similarly, the majority says an "additional con-
straint" of the Defining Limitation is "that the *card infor-
mation* determines (i.e., establishes) *the* memory location
of the biometric data." Maj. Op. at 7 (citing "'039 patent at
claim 1"). The majority also implies that the patent re-
quires that "the card information itself *sets* the *location* of
the biometric data." Maj. Op. at 8–9. The majority elides
that under the Board's undisputed construction, the card
information itself does not establish the location, but "the
card information provides data that establishes *where*, i.e.,
at what memory location or address, the system will *store*
the fingerprint data." Appx0015–16. The majority's anal-
ysis does not cite to the Board's claim construction at all.
The majority's substitution of its own judgment is incon-
sistent with our standard of review.

Second, the majority fails to examine "the record as a
whole." *TQ Delta*, 942 F.3d at 1358; *see also* 5 U.S.C. § 706.
The Board found that Hsu's "associated" teaching discloses
the Defining Limitation based on Merriam-Webster's Dic-
tionary, the Board's reading of Hsu, the Lipoff Deposition,
and "common database structures and functions"—as well
as the Lipoff Declaration and Lipoff Second Declaration.
Appx0032–39. From those Declarations, the majority se-
lectively quotes excerpts of some, but not all, of the mate-
rial on which the Board relied, and deems it conclusory.
Maj. Op. at 8. In so doing, the majority fails to acknowledge
Lipoff's reasoning and evidentiary basis in the prior art.

Without further explanation, the majority rejects the Board's findings for lack of substantial evidence. I disagree that Lipoff's testimony was conclusory. Sentences may, of course, be reduced to fractions that sound conclusory in isolation, but such reduction is contrary to our substantial evidence review. Indeed, even if Lipoff's testimony in both his reports was conclusory, the majority does not meaningfully examine the Board's other evidentiary bases for its finding. The majority merely asserts that "[a]ll of the Board's relied-upon evidence has the same infirmity [the majority] identified" as to Lipoff's Declarations. Maj. Op. at 9 n.4. Because this characterization of all the remaining evidence is at once sweeping and also vague, it is inconsistent with our standard of review. 5 U.S.C. § 706.

## III.

For these reasons, I respectfully dissent.